## SEALS v. UNITED STATES.

### No. 690.

District Court, W. D. Louisiana,
Shreveport Division.

Aug. 6, 1938.

Seals & Atkins, of Homer, La., Foster, Hall, Barret & Smith, of Shreveport, La., and J. L. Backstrom, of Dallas, Tex., for complainant.

Ben F. Roberts, former U. S. Atty., H. G. Fields, U. S. Atty., and M. E. Lafargue, Asst. U. S. Atty., all of Shreveport, La., for respondent.

DAWKINS, District Judge.

Plaintiff, as the executor of the estate of Mrs. Hazel Shaw (McDonald) Wheeler, brought this suit to have canceled the claim and lien of the government against certain real property, resulting from the recordation of a certificate of deficiency in income taxes for the year 1921; and in the alternative, prayed that the inscription against the property be erased and the claim of the government referred to the proceeds in the hands of the Probate Court of Claiborne Parish.

The first five articles of the petition alleged, (1) the death of Mrs. Wheeler on March 8, 1932, and the probating of her will, (2) the appointment of plaintiff as dative testamentary executor on October 14,

1935, by the State Court for Claiborne Parish, (3) the sale by the Sheriff in the probate proceedings of the lands in question, consisting of of some 800 acres, together with a 9⁄512th royalty interest in the minerals under said lands, (4) that the said property was sold to Urban Land Company, Inc., for the sum of $670, "being more than two-thirds of the appraised value", and (5) that the mortgage certificate presented at the sale as required by the State law showed certain "encumbrances and tax liens in favor of the United States against the deceased", (a) "Notice of tax lien", filed October 22, 1934, in the sum of $18,881.54, "being for additional income taxes for the year 1921", and (b) "Statement of claim for taxes for the year 1921".

Defendant admitted all the allegations of these five articles or paragraphs, except that it denied that the price of $670, for which the property was bid in at the Sheriff's sale under orders of the Probate Court, "was more than two-thirds of the appraised value * * *".

Articles 6 to 10, inclusive, of the petition alleged (6) that under the law of the State all liens and encumbrances against property belonging to the succession were extinguished by the sale under orders of the court, and were automatically referred to the proceeds, (7) that the purchaser was entitled to receive the property free from such liens, and this court should render order to that effect, "transferring said liens (of the government) to the proceeds of the sale in the hands of your petitioner"; (8) that the said assessment of income taxes was null and void because not assessed within three years from the filing of her return by the deceased, and was barred by limitations; (9) should the government contend that limitations was waived, "or suspended until the decision of the Board of Tax Appeals became final" then the said statute of limitations was still a bar "for the reason that the delay of said waiver had expired more than three years prior to said assessment and the filing of said lien, the said delay of the waiver having commenced anew sixty days after the decision of the Board of Tax Appeals, namely on May 16, 1932, which period tacked to the original period which had run prior to the date of the statute of limitations was suspended by the proceedings before the Board of Tax Appeals, aggregated more than three years"; (10) in the alternative, should the lien of the government be held valid, there are other claims in the probate proceedings which prime those of the defendant, "such as court costs, costs of administration, expenses of last illness and burial expenses, which will consume the entire assets of the succession."

All of these paragraphs (6 to 10, inclusive) were denied by the answer.

Article 11 alleged that the government had, on September 23, 1935, under destraint, seized the sum of $569.63 in the hands of the Standard Oil Company of Louisiana, "to apply upon said tax lien", and which had accrued to the credit of the deceased, and this allegation was admitted by the defendant.

The remaining articles or paragraphs of the petition (12 to 15, inclusive) were denied. They alleged as follows: (12) That the warrant of destraint seizing funds of the deceased in the hands of the Standard Oil Company "was barred by the statute of limitations", and the funds "so collected should be returned to petitioner"; (13) that "in any event" said funds should be paid over to the probate court by the defendant, "to be properly administered"; (14) that "written request had been made of the Collector of Internal Revenue to make an investigation of the matters herein complained of to no avail, and that it is necessary that petitioner resort to the proceedings herein in order to secure an adjudication adjusting the liens of the United States on the property involved * * *"; and (15) that "under act of March 4, 1931, C. 515, 46 Stat. 1528; May 17th, 1932, C. 190, 47 Stat. 158, 28 U.S.C.A. §§ 901 to 906, the United States has consented to be made a party in any suit brought in the United States District Court "for the purpose of securing an adjudication adjudging any mortgage or other lien the United States may have or claim on the premises involved."

Petitioner prayed for service according to law and for judgment "ordering the cancellation of the notice of tax lien and of the statement of claim for taxes * * *, on the ground that the said assessment and the lien thereunder were barred by the statute of limitations." In the alternative, first, that the said lien be canceled, in so far as the property sold to the Urban Land Company is concerned, and the claim of the government be referred to the proceeds in the hands of the Probate Court; and, second, that this court decree "the court costs and

costs of administration * * *, as well as of last illness and burial expenses of the deceased" have priority over those of the United States. Finally, plaintiff prayed that he have judgment "declaring the collection of" the money ($569.63) from the Standard Oil Company of Louisiana "irregular and that the said amount be decreed to belong to petitioner * * *."

The answer of the defendant prayed that the entire demand be rejected.

A motion to dismiss and a demurrer were overruled preliminarily.

The case has been submitted upon the admissions in the pleadings and certain documentary evidence. From the admissions so made and the evidence so offered, I find the facts as follows:

The plaintiff is the duly appointed dative testamentary executor of Mrs. Hazel Shaw (McDonald) Wheeler, deceased, having been appointed as such on October 14, 1935, by the Probate Court of Claiborne Parish. On January 4, 1936, the Sheriff of said Parish, pursuant to an order of said court, sold the lands, consisting of some 800 acres, described in detail in the petition, and against which the government had recorded two instruments, as follows:

"Mrs. Hazel Shaw Wheeler Notice of Tax Lien to United States. Filed for record at 1:00 o'clock P. M., Oct. 22, 1934. Recorded on page 144, Book LL, Mortgage Records, Claiborne Parish, and under file No. 94671, for the sum of $18,881.54, being for additional income tax for the year 1921.

"Mrs. Hazel Shaw (McDonald) Wheeler, Statement of Claim for Taxes to United States. Dated Oct. 25, 1935. Filed for record at 11:22 A. M., Nov. 1, 1935. Recorded on page 427, Book LL, Mortgage Records, Claiborne Parish, and under file No. 101167, for the sum of $18,311.91, being for additional income taxes for the year 1921."

They were bid in by the Urban Land Company, Inc., a Louisiana corporation, domiciled in Caddo Parish, for the sum of $670. The lands were duly appraised in the succession proceeding at the sum of $1,-000, and the remainder of the estate, according to the inventory filed in the Probate Court, consisted of amounts "accrued from oil runs" in possession of the Gulf Refining Company, $1,168.98, Standard Oil Company, $569.63, Arkansas Fuel Oil Company, $426.-89, which added to the appraised value of the land make a total of $3,160.50.

Claims presented against the succession and recognized by the executor are as follows:

| | |
|---|---:|
| "Robertson, Mueller, Harper, Inc. Funeral Directors, Ft. Worth, Texas; March 12, 1932 | $ 227.50 |
| Dr. W. E. Vanderere, 810 Basset Tower, El Paso, Texas, Aug. 29, 1931 to Feb. 11, 1932 | 70.00 |
| Master and Maxon, Inc., Funeral Directors, El Paso, Texas | 558.46 |
| Elizabeth Kelly, Registered Nurse, El Paso, Texas; Sept. 13, 1931 to March 9, 1932... | 372.00 |
| The Homan Sanatorium, El Paso, Texas; July 21, 1931 to March 9, 1932.......... | 1,003.39 |
| Total .................... | $2,231.35." |

and which, together with the court costs, according to the affidavit of the plaintiff, will absorb the entire assets of the succession.

On December 21, 1925, J. D. Taggart, as "attorney for Hazel McDonald", acknowledged receipt of a letter from the Commissioner of Internal Revenue, requesting a waiver of delays for making the assessment of income taxes, and in reply the said attorney stated that "Mrs. McDonald is at present in Shreveport, Louisiana, but Mr. E. H. Cleckner holds her general power of attorney and has executed the waiver, as requested, and the same is enclosed herewith". The document so enclosed was the usual form of waiver of limitations for assessment of taxes, for both the years 1920 and 1921, was dated "12/21/25", and was to "remain in effect until December 31, 1926, and shall then expire except that if notice of a deficiency is sent to said taxpayer by registered mail before said date, and (1) no appeal is filed therefrom with the United States Board of Tax Appeals, then said date shall be extended sixty days, or (2), if an appeal is filed with the said Board, then said date shall be extended by the number of days between the date of mailing said notice of deficiency and the date of final decision of said Board." To this instrument was signed the name of the taxpayer, Mrs. McDonald, by said Cleckner, "as her attorney in fact." It was never signed by the Commissioner of Internal Revenue.

On December 14, 1927, there was filed with the Board of Tax Appeals by the deceased a petition which alleged that "on De-

cember *29, 1926,* the respondent (Commissioner of Internal Revenue) mailed to your petitioner a notice of deficiency of income taxes, alleged to be due by the petitioner for the year 1921" and attached to said petition was a copy of said notice. The petition alleged that there was a controversy between the taxpayer and the Commissioner, as to the net sum of $2,898.25, claimed as a deficiency by the government in income taxes due for the year 1921.

On December 8, 1931, the Board of Tax Appeals entered its "order of final determination", in which it recited:

"On October 30, 1931, respondent filed in this proceeding his recomputation of the tax in accordance with the findings of fact and opinion promulgated by the Board September 16, 1931, and said recomputation was set for hearing December 2, 1931, and notice thereof was sent to petitioner. The matter came on for hearing on said date and petitioner did not appear to contest the recomputation which had been made and filed by respondent. Said recomputation has been carefully examined and the Board finds that it conforms to the findings of fact and opinion promulgated in this proceeding September 16, 1931.

"Ordered and decided that there is a deficiency in tax for the year 1921 of $11,-654.09."

On July 16, 1932, the Commissioner of Internal Revenue issued his "assessment certificate", showing that the taxpayer owed the government $11,654.09, in principal, and $7,227.45, interest, as income taxes; and under date of October 16, 1934, the Collector of Internal Revenue at New Orleans, Louisiana, issued a notice of a tax lien for the total sum of $18,881.54, which was addressed to the Recorder of Mortgages of Claiborne Parish, and duly recorded on October 22, 1934.

■ Under the facts thus recited, I am of the view that the plaintiff, as executor of the estate, having sold the lands, with the implied warranty of the State law, which exists in all sales of real estate, unless specially waived, owes the duty of furnishing the purchaser a clear title, and therefore has an interest and standing to bring this proceeding to remove the cloud of the government's lien therefrom.

■ It is my view that the plaintiff waived the failure of the Commissioner to sign the agreement extending the time for re-examination of the income tax liability by contesting the merits of the claim before the Board of Tax Appeals without urging that defense.

■ The Probate Court undoubtedly had jurisdiction to administer the entire estate, including these lands, and to sell any part thereof deemed necessary in doing so. The government stands as any other creditor, and the relative rights of claimants against the res of that estate is an issue to be determined by that court. The government has already submitted itself to the jurisdiction of the State Court by filing its claim in the Probate proceedings, and I see no reason why that tribunal should not proceed to a hearing and determination of its rights along with those of other creditors.

■ My conclusion is that the plaintiff is entitled to judgment ordering the cancellation of the lien or effect of recordation of defendant's claim as against the lands and that the claim of the government should be referred to the proceeds of the property in the hands of the Probate Court.

Proper decree should be presented.